(40 Misc. Rep. 286.)

PEOPLE ex rel. TRUSTEES OF AMITY BAPTIST CHURCH v. MONROE,. Commissioner.

(Supreme Court, Special Term, New York County. March, 1903.)

1. WATER TAX—EXEMPTIONS.

    Laws 1902, p. 1758, c. 605, § 1, extending the exemption from assessment for water supply to any social settlement which shall own or lease for a term of not less than three years a building devoted exclusively to the purpose. of such settlement, does not exempt the building adjoining, owned and used by the church in part for its own purposes and in part for a social settlement conducted therein by its officers.

Application by the people, on the relation of the Trustees of the Amity Baptist Church, against Robert Grier Monroe, commissioner of water supply of the city of New York. Motion denied.

Mornay Williams, for relator.

George L. Rives, Corp. Counsel (A. T. Campbell, Jr., of counsel), for respondent.

Benjamin Tuska, intervening as amicus curiæ.

LEVENTRITT, J. This is an application for a peremptory writ of mandamus to compel the respondent, as commissioner of water supply, gas, and electricity, to cancel all charges for water rates appearing of record against the relator on premises 312 West Fifty-Fourth street, borough of Manhattan, city of New York, and that he register this property as exempted from water rates so long as the same is used for the purpose of a social settlement. The exemption is invoked under chapter 605, p. 1758, of the Laws of 1902, amending chapter 696, p. 902, of the Laws of 1887, which was an act to provide hospitals, orphan asylums, and other charitable institutions with water, and remitting assessments therefor. Section 1 of the act of 1902 extends the exemption to "any social settlement, whether incorporated or unincorporated, which shall own or lease for a term not less than three years a building or buildings devoted exclusively to the purposes of such social settlement, now existing or hereafter established in the city of New York." Were a precise definition of the term "social settlement," necessary for the purpose of this motion, the court might find itself at a loss to make it. It is a term that has not yet found its way into the dictionaries, nor do the legislative records and debates furnish a guide to the meaning intended. A general conception, which probably most of us have, would hardly be sufficient for the purposes of applying necessarily strict rules to the construction of a statutory exemption. Accepting the word "settlement" as used in the sense of an abiding place or residence of a group of persons, and taking the word "social" in the sense in which it is used in "social science," which is defined in the Century Dictionary as concerning itself with questions relating to public health, education, labor, punishment of crime, reformation of criminals, pauperism, and the like, we might reach the definition urged by the relator, to wit, that a "social settlement is the settled place of abode or residence of a group of persons concerning themselves with the social condition or well-being of the inhabitants of

the district where they live as regards health, education, labor, pauperism, crime, and reformation of criminals, and the like." This, however, is hardly sufficiently precise. The court should have the guidance of experts—those engaged in the settlement work—in order properly to limit or extend the term. The only testimony on this point before the court is that given by one of the workers, who was examined on the hearing to determine whether the exemption should be allowed, and who defined the phrase as "a residence of persons engaged in social and neighborhood work. By social work I mean work for the betterment of a district or neighborhood other than religious." This definition altogether lacks precision. Under it could be included many charities, which, from the context of the act granting exemption, are obviously not included in the phrase. The court should have the assistance of the testimony of persons familiar with institutions popularly known as "social settlements," whose connection with such institutions, and whose ability to describe their objects, scope, and work, would qualify them to give an expert opinion.

I find, however, that it is unnecessary for the purpose of this motion to lay down or accept any very precise definition, as I am of the opinion that the relator does not otherwise bring itself within the provisions of the statute. The relator is a religious corporation, occupying as its church building No. 310 West Fifty-Fourth street, in the borough of Manhattan. Exemption is sought for the adjoining property, No. 312 West Fifty-Fourth street, which is owned by the relator, and used by it as a settlement house, although the treasurer of the relator, who is likewise superintendent of the settlement, also called it a church house. The settlement has, according to the testimony of the pastor of the relator, who is likewise head of the settlement, no organization separate from that of the church, it has no articles of association, and gets the use of the building from the church. The building occupied as the settlement house consists of four stories. The first floor is used for a kindergarten and a medical dispensary; the second floor for evening classes, Bible classes, and public school lectures. On Sundays, however, this floor is utilized by the relator for church purposes, that of conducting its Sunday school classes. The third and fourth floors are devoted to residence purposes, the pastor and treasurer of the relator, with their respective families, and deaconesses and nurses connected with the applicant, living there. It is impossible on the papers before me, especially so far as the pastor and treasurer of the church and their families are concerned, to say whether the occupancy is solely by virtue of connection with the church or with settlement work. The probability is that it cannot be ascribed solely to either relationship, but partly to each.

It needs no argument to show that the relator, the church, is not itself a social settlement, however broadly or narrowly we may define that term. It makes the application for exemption on behalf of a social settlement conducted by it. The statute, however, as I read it, extends the exemption to a social settlement existing as a separate and independent entity. It may be a voluntary association or it may be incorporated, but that it must have individual being is ap-

parent from the language of section 1, which provides that it "shall own or lease for a term not less than three years a building or buildings devoted exclusively to the purposes of such settlement."

It is urged in the brief submitted by the amicus curiæ that the court should differentiate between the trustees of the relator as a religious society and the same trustees as a philanthropic body carrying on the settlement work. This might be done were the settlement society incorporated, or even in a state of voluntary association, if the enterprise carried on were entirely divorced from the church affairs of the relator. But I find it quite impossible to eliminate this question of substantial identity. This is all the more difficult owing to the double uses to which the settlement property is put, uses which in themselves bar the relief as they negative that exclusive use required by the statute. The conduct of the Sunday school, the use of portions of the building for residence purposes by church officials, as such, and by the deaconesses for work unconnected with settlement objects, are not such minor or negligible factors that they may be disregarded under the strict construction which must be applied to cases of exemption. Although the work conducted on the premises is in the nature of settlement work, it is, in another aspect, distinctly a branch of the church charity, and as such would seem to fall within the principle of the decision in Roman Catholic Church of St. James v. Dalton, N. Y. L. J., March 28, 1899, affirmed 44 App. Div. 642, 61 N. Y. Supp. 1147, where an exemption for water rates was sought on somewhat similar grounds. In any aspect of the case, I am of the opinion that the motion should be denied. No costs.

Motion denied, no costs.